UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

| | | |
|---|---|---|
| MICHAEL ALLEN KITCHEN, | : | Case No. 1:22-cv-500 |
| Plaintiff, | : | |
| vs. | : | Judge Matthew W. McFarland |
| | : | Magistrate Judge Peter B. Silvain, Jr. |
| LUCASVILLE CORRECTIONAL INSTITUTION, *et al.*, | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATIONS[1]

This matter is currently before the Court upon Defendant's Motion for Summary Judgment (Doc. #41), Plaintiff's Response in Opposition (Doc. #45), and Defendant's Reply (Doc. #46). For the reasons that follow, the undersigned **RECOMMENDS** that the Court **GRANT** Defendant's Motion for Summary Judgment.

**I.   Background**

In August 2022, Michael A. Kitchen ("Plaintiff") filed a civil rights action pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights while incarcerated at the Southern Ohio Correctional Facility (SOCF) in Lucasville, Ohio. (Doc. #s 1, 3). Plaintiff is proceeding *pro se* and *in forma pauperis*.

Plaintiff filed his complaint against several parties: Officer A. Corns ("Defendant"), Officer J. Romine, the Lucasville Correctional Institution, and the Ohio Department of Corrections. (Doc. #1, *PageID* #1). In his complaint, Plaintiff alleges Defendant instructed him to

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

retrieve a jump rope from the equipment room of the prison during recreation time. *Id.* at 5. When Plaintiff complied with Defendant's request, he was then attacked and brutally assaulted by Defendant and Romine "for no reason." *Id.* According to Plaintiff, he sustained fractures to his face and required stitches around both of his eyes, on his earlobes, and on his head as a result of the incident. *Id.* Plaintiff requests punitive damages in the amount of $10 million due to physical and emotional injuries. (Doc. #1, *PageID* #6).

Upon initial screening, the undersigned recommended that Plaintiff be allowed to proceed on his Eighth Amendment excessive force claim against Defendant and Romine but also recommended that remaining claims against Defendant and Romine in their official capacity, the Ohio Department of Corrections, and the prison itself be dismissed. (Doc. #5; *PageID* #23). District Judge Matthew W. McFarland adopted the Report and Recommendation in January 2023. (Doc. #7). However, after being unable to locate and serve Romine, Plaintiff's claims against him were dismissed without prejudice for failure to serve, in accordance with Federal Rules of Civil Procedure 4(m). (Doc. #s 34, 35).

In his motion for summary judgment, Defendant contends he was supervising recreation time in the gymnasium of the prison when Plaintiff asked if he could retrieve a jump rope from the equipment room. (Doc. #41, *PageID* #168). As Plaintiff entered the equipment room, Defendant observed Plaintiff put both of his hands down his pants as if he was attempting to retrieve something before pulling an unknown object out of his pants and holding it in his right hand. *Id.* Defendant took out his OC spray and ordered Plaintiff to drop whatever he was holding and took out his OC spray, but Plaintiff refused and began to attempt to put to object in his mouth. *Id.*; (Doc. #41-1, *PageID* #177). Defendant administered the OC spray to Plaintiff's face, causing Plaintiff to drop the object. *Id.*; (Doc. #41-4, *PageID* #186). When Defendant moved to secure Plaintiff,

2

Plaintiff struck Defendant, causing him to become disoriented and prompting Defendant to activate his man down alarm. *Id.* When Defendant stood up, he observed another prison officer attempting to secure Plaintiff, who continued to physically assault the officer, before additional officers arrived and eventually secured him. *Id.* at 187–88. Officers escorted Plaintiff to the infirmary before taking him to an outside medical clinic for further assessment and treatment. *Id.* Plaintiff sustained lacerations and bruising, and he was treated for these injuries. (Doc. #41-3) (detailing a superficial laceration to the middle of the forehead, a laceration to the right side of Plaintiff's head, a laceration above the right eyebrow of "moderate depth," and multiple contusions to the bilateral part of the forehead). The objects that Plaintiff refused to drop were later identified as "multiple white squares of soaked pieces of paper suspected to be K2." (Doc. #41-4, *PageID* #187). The Rules Infraction Board ("RIB") later found Plaintiff guilty of possessing an illicit substance in connection with the incident. (Doc. #41-4).

## II.     Standard of Review

Motions for summary judgment are governed by the Federal Rule of Civil Procedure 56. To determine whether to grant a motion for summary judgment, the court must establish whether there is a genuine issue of material fact and whether the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material when it has the capacity to affect the outcome of the lawsuit. *Beans v. City of Massillon*, No. 5:15-cv-1475, 2016 U.S. Dist. LEXIS 180335, at *5 (N.D. Ohio Dec. 30, 2016) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). It is not the trial court's role, at this juncture, to weigh the evidence and determine the truth of the matter asserted. *Anderson*, 477 U.S. at 249–52 (finding the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").

A genuine issue of material fact generally does not exist where the record could not "lead a *rational* trier of fact to find for the non-moving party . . .." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986) (emphasis added). This is true even when opposing parties allege two different sets of facts but one is "blatantly contradicted by the record, so that no *reasonable* jury could believe it . . ." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (emphasis added). However, the court must view any facts that are not blatantly contradicted by the record in the light most favorable to the non-moving party. *Coble v. City of White House, Tenn.*, 634 F.3d 865, 870 (6th Cir. 2011). Where there are contradictory facts, the non-moving party must "present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *Maston v. Montgomery Cnty. Jail Med. Staff Pers.*, 832 F. Supp. 2d 846, 849 (S.D. Ohio 2011) (quoting *Sixty Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)).

However, the movant bears the initial burden of establishing that there are no genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The movant must inform the court of the basis of its motion by identifying, with sufficient specificity, the portions of the record it believes "demonstrate the absence of a genuine issue of material fact." *Id.* at 322. The court must analyze the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Matsushita*, 475 U.S. 574, 587; *Pittman v. Experian Info. Solutions, Inc*., 901 F.3d 619, 628 (6th Cir. 2018); *Satterfield v. Tennessee*, 295 F.3d 611, 615 (6th Cir. 2002); *Little Caesar Enters., Inc. v. OPPC, LLC*, 219 F.3d 547, 551 (6th Cir. 2000). Once the movant has satisfied its burden, the burden shifts to the non-moving party to demonstrate that there are genuine issues of a material fact. *Anderson*, 477 U.S. at 257; *Zinn v. United States*, 885 F. Supp. 2d 866, 871 (N.D. Ohio 2012) (citing *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992)).

The non-moving party cannot rely on their allegations alone but rather they "must set forth specific facts showing that there is a genuine issue for trial." *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968).

Filings submitted by *pro se* plaintiffs are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999)). However, a plaintiff's status as a *pro se* litigant does not alter their burden to support their factual assertions with admissible evidence. *Maston*, 832 F. Supp. 2d at 851–52 (citing *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010)).

### III. Discussion

Defendant now asks this Court to grant summary judgment in his favor, pursuant to Fed. Civ. R. 56. (Doc. #41, *PageID* #167). Defendant asserts that his actions do not satisfy the standard for an Eighth Amendment claim for use of excessive force for two reasons. *Id.* at 171. First, Defendant acted "in good faith to maintain order or restore discipline," namely to keep Plaintiff from using drugs during recreation time, after Plaintiff refused to comply with Defendant's orders. *Id.* at 172. In response to Defendant's good-faith effort to maintain order, Plaintiff assaulted Defendant, disorienting him and causing him to call on non-defendant officers to secure Plaintiff. *Id.* It was those non-defendant officers who, in an attempt to secure Plaintiff, caused Plaintiff's injuries. *Id.* ("Defendant himself did not participate in securing Plaintiff and later had to seek medical treatment for injuries.") (citations omitted). Second, Plaintiff's pain is not "sufficiently serious to offend contemporary standards of decency." *Id.* at 173 (quotations omitted). Defendant asserts that Plaintiff's injuries are "objectively reasonable in light of the facts." *Id.* Specifically, Plaintiff resisted detention and assaulted the prison officers who were attempting to secure him.

5

According to Defendant, it is reasonable that an inmate might sustain lacerations and bruising "in that type of scuffle." *Id.*

Further, even if Plaintiff can establish that Defendant acted maliciously and sadistically and that Plaintiff's pain is sufficiently serious to offend contemporary standards of decency, Defendant asserts that he is entitled to qualified immunity. *Id.* at 174. Defendant contends that, even in the light most favorable to the Plaintiff, he did not violate Plaintiff's constitutional right. *Id.* at 175 ("Because Defendant's actions were both objectively and subjectively reasonable, no Constitutional violation occurred, and Defendant is entitled to qualified immunity.").

In response to Defendant's Motion for Summary Judgment, Plaintiff filed a response in opposition to the motion for summary judgment. (Doc. #44). Plaintiff refutes Defendant's assertion that Plaintiff asked to retrieve the jump rope, stating that Defendant requested Plaintiff retrieve the jump rope for another inmate because prison officers were preparing to close and lock the equipment room and it would not reopen until after recreation time ended. *Id.* at 197. Plaintiff also maintains that he did not have any contraband on his person. *Id.* Plaintiff asserts that he requires a Computer Voice Stress Analyzer (CVSA) test to "prove his side of this story." *Id.*

Defendant filed a reply in support of his motion for summary judgment, which largely restates the assertions in his motion for summary judgement. (Doc. #46).

A. **Excessive Force under the Eighth Amendment**

A convicted prisoner has a Constitutional right to be free from the use of excessive force under the Eighth Amendment. U.S. Const. amend. VIII; *Whitley v. Albers*, 475 U.S. 312, 327 (1986). To determine whether a violation occurred, the court must ask whether the force was used in good faith to maintain discipline or whether it was employed to maliciously or sadistically cause harm. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7

6

(1992)). This analysis is composed of two parts: (1) the subjective element of the prison officer's state of mind and (2) the objective element of the pain the prisoner experienced, which is evaluated under the standard of "sufficiently serious." *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)).

The subjective element requires that the intent of the prison officer rise above "deliberate indifference" and instead be "maliciously and sadistically to inflict pain." *Johnson v. Sootsman*, 79 F.4th 608, 616 (6th Cir. 2023) (quoting *Hudson*, 503 U.S. 1, 5–7 (1992)). A prison officer's use of force does not violate a prisoner's Eighth Amendment right so long as he believed it was necessary; this is true even if that belief is unreasonable. *Id.* Courts have generally considered several factors to determine the prison officer's intent, including the extent of the prisoner's injury, the nature of the threat that justified the use of force, the amount of force and its proportionality to the threat, and whether the officer took any actions to reduce the required amount of force. *Id.* at 618 (citations omitted).

The objective element requires the harm to a prisoner "rise to a sufficiently serious level because the Eighth Amendment prohibits only 'cruel and unusual' deprivations." *Johnson*, 79 F.4th at 615. Courts measure whether conduct is "cruel and unusual" using "contemporary standards of decency." *Id.* at 616. The court must look to the nature of the force instead of the extent of the injury, though the extent of a prisoner's injury may help determine the amount of force used. *Wilkins*, 559 U.S. 34, 34–37 ("Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury."). However, the absence of serious injury is a relevant factor. *Id.* at 37. (finding that the absence of serious injury may suggest the force used was proportional or reasonably necessary given the individual circumstances). The Eighth Amendment is not typically violated

7

by "'*de minimis* uses of physical force' so long as this force does not repulse 'the conscience of mankind.'" *Johnson*, 79 F.4th 608, 616 (quoting *Hudson*, 503 U.S. 1, 9–10).

### B. Analysis

Both parties agree that the incident took place on February 13, 2021, that the incident occurred in the equipment room during recreation time, and that several prison officers were involved. (Doc. #s 41, 44). The parties contest why Plaintiff entered the equipment room, why force was employed, and whether the force was excessive. On its face, it seems the parties' contradictory stories cannot be resolved on summary judgment. *Id.* However, when opposing parties allege two different sets of facts, the court must determine whether one story is "blatantly contradicted by the record, so that no reasonable jury could believe it . . ." *Scott*, 550 U.S. 372, 380.

To support the assertions in his motion for summary judgment, Defendant provided declarations from himself and a non-defendant prison officer present during the incident; Plaintiff's medical exam report from the SOCF infirmary, following the incident; the officers' conduct report and supplement; the hearing officer's report; the disposition of the Rules Infraction Board ("RIB"); the result of the warden's administrative review; and a declaration from the warden's assistant. (Doc. #s 41-1–41-4). Defendant's accounts of the incident are corroborated by the declaration and by the findings detailed in the disposition of the RIB. (Doc. #s 41-4, *PageID* #190). Specifically, during the RIB process, Plaintiff contended that he did have an object in his pants, but it was his identification card. *Id.* at 188. The RIB did not find this explanation convincing. *Id.* at 190. The RIB adopted the following facts in its disposition: (1) Plaintiff had his hands in his pants, (2) which prompted Defendant to approach, (3) at which point Plaintiff put an

unknown object in his mouth, and (4) after ordering Plaintiff to drop the object, (5) Defendant administered OC spray. *Id.*

Looking first at the subjective element, Defendant has presented evidence that he believed his use of force was necessary to maintain the peace, and the purpose of the force was not to maliciously and sadistically inflict pain. Defendant saw Plaintiff with an unknown object and ordered him drop it. (Doc. #41-1, *PageID* #177). Defendant took steps to mitigate or reduce the required amount of force by first using the OC spray and then attempting to secure Plaintiff, using the OC spray only after Plaintiff failed to comply with his orders and in an attempt to get Plaintiff to drop the unknown object. *Id.* Plaintiff then hit Defendant with a closed fist, causing him to fall to one knee and activate his man down alarm. *Id.* at 177–78. Upon receiving the notification of a prison officer in distress, other, non-defendant prison officers employed force to subdue Plaintiff, for both his safety and for the safety of the prison officers. *Id.* at 178. While the force employed appears to be proportional to the threat, there is no evidence in the record that Defendant was the one who employed it, apart from administering the OC spray. *Id.* While it is unpleasant, courts have generally held that the administration of OC spray is *de minimis* "temporary discomfort" and does not rise to the level of a sufficiently serious injury. *Jeter v. Ohio Dep't of Rehab. & Corr.*, No. 1:17-cv-756, 2019 U.S. Dist. LEXIS 175068 (S.D. Ohio Oct. 9, 2019); *Goudlock v. Blankenship*, No. 1:13-cv-1215, 2016 U.S. Dist. LEXIS 89484 (N.D. Ohio July 11, 2016).

Turning to the subjective element, Plaintiff's injuries are not sufficiently serious to offend contemporary standards of decency. Notably, Plaintiff does not allege any injuries from the OC spray. (Doc. #s 1, 44). Further, contrary to Plaintiff's assertions, the medical documentation contains no evidence that he sustained fractures to his face. (Doc. #41-3, *PageID* #s 181–83). Instead, Plaintiff sustained lacerations and bruising, especially to his face. *Id.* However, most of

Plaintiff's lacerations are described as "superficial," according to medical personnel. *Id.* While Plaintiff is not required to demonstrate a significant injury to prevail on his excessive-force claim, that his injuries were *de minimis* strongly supports Defendant's assertions that he did not behave maliciously or sadistically with the intent to cause harm. *Hudson*, 503 U.S. 1, 9–10. Plaintiff's injuries are congruent with what a reasonable trier of fact might expect as a result of a similar interaction between prison officers and inmates.

In his response to Defendant's motion for summary judgment, Plaintiff emphasized one specific fact in controversy—why he was in the equipment room. (Doc. #44, *PageID* #197). However, Plaintiff did not point to any additional material facts in controversy and did not assert more than mere allegations as to why he was in the equipment room and who is the "real" victim. *Id.* at 2. The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247–48. While the parties have asserted contradictory stories regarding why Plaintiff was in the equipment room and how or why Defendant employed force, Plaintiff's contradictory facts lack significant probative evidence that would necessitate a trial to come to a resolution. *Maston*, 832 F. Supp. 2d 846, 849. The reasoning behind why Plaintiff was in the equipment room is unlikely to affect the outcome of the case, should it continue to trial; Plaintiff does not assert that the alleged assault happened as a result of him being in the equipment room, nor does Defendant assert that he initiated contact with Plaintiff because Plaintiff was in the equipment room. (Doc. #s 1, 41, 44). This renders the fact immaterial. Furthermore, Plaintiff purports that Defendant assaulted him "for no reason. (Doc. #1). However, Defendant contends he initiated contact after observing Plaintiff retrieving an unknown object from his pants and soon after employed force to keep Plaintiff from ingesting illicit substances, which was later verified during an RIB hearing. (Doc. #s 41, 41-4).

The record so flagrantly contradicts Plaintiff's assertions that, even in the light most favorable to Plaintiff, it is unlikely that a rational trier of fact could find for Plaintiff. *Matsushita*, 475 U.S. 574, 587.

Accordingly, Defendant has met his burden of establishing that there are no genuine issues of material fact. Moreover, Plaintiff has not met his burden to demonstrate that there are genuine issues of a material fact. Therefore, as Defendant's actions do not satisfy the standard for an Eighth Amendment claim as a matter of law, Defendant's Motion for Summary Judgment should be granted, and this case should be terminated.

### IV.     Conclusion

The undersigned Magistrate Judge, having considered Defendant's Motion for Summary Judgment, **RECOMMENDS** that:

1. Defendant Anthony Corns's Motion for Summary Judgment (Doc. #41) be **GRANTED**; and

2. The case be terminated on the Court's docket.

July 29, 2025                                                                        *s/Peter B. Silvain, Jr.*
                                                                                     Peter B. Silvain, Jr.
                                                                                     United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).